## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JILL A. STAFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-02032-TWP-MPB |
| | ) | |
| ANTHEM LIFE INSURANCE COMPANY, and | ) | |
| WELLPOINT FLEXIBLE BENEFIT PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-motions for summary judgment (Filing No. 21; Filing No. 23).  Plaintiff Jill A. Stafford ("Stafford") brought this claim under the Employee Retirement Income Security Act ("ERISA") against Defendants Anthem Life Insurance Company ("Anthem"), and affiliate WellPoint Flexible Benefit Plan (collectively, "Defendants"). On summary judgment, Stafford alleges that Anthem failed to provide her with a full and fair review of her claim for benefits, rendering Anthem's decision to terminate her benefits arbitrary and capricious.  Anthem argues that it possessed a rational basis and explanation for terminating Stafford's benefits.  For the reasons set forth below, the Court **denies** Stafford's motion and **grants** Anthem's motion.

## I.   BACKGROUND

Stafford worked as a Senior Vendor Audit Coordinator for Anthem, Inc. (formerly WellPoint).  (Filing No. 20-2 at 8.)  Her position required typing, note-taking, and answering telephones.  (Filing No. 20-2 at 15.)  She earned approximately $60,000.00 per year.  (Filing No. 20-2 at 8.)  On December 7, 2012, Stafford suffered a non-work-related injury when she fell in her backyard.  (Filing No. 20-2 at 16.)  She fractured her right arm in multiple places, and underwent

open reduction and internal fixation ("ORIF") surgery.  (Filing No. 20-5 at 29.)  Six weeks after surgery, she developed complex regional pain syndrome ("CPRS"), and received treatment including steroids, bone growth stimulator, and physical therapy.  (Filing No. 20-5 at 31.)  Stafford is right-handed, so the injury affected her dominant hand.  (Filing No. 20-7 at 51.)  Stafford applied for and received short-term disability benefits, which she was awarded for the maximum period of time, 180 days.  (Filing No. 20-5 at 33.)

Stafford is also covered by a long-term disability ("LTD") benefit program, provided as part of the Anthem Flexible Benefit Plan ("the Plan").  (Filing No. 20-5.)  Under the LTD component of the Plan, a claimant is "disabled" during the first 24 months of any period of disability when, because of her injury or sickness, all of the following are true:  (1) "[she is] unable to do the mental and substantial duties of [her] own occupation;" (2) "[she is] receiving regular care from a doctor for that injury or sickness;" and (3) "[her] disability work earnings, if any, are less than or equal to 80% of her indexed pre-disability earnings."  (Filing No. 20-1 at 231.) Stafford applied for LTD benefits on April 10, 2013, (Filing No. 20-7 at 51), and Anthem approved those benefits to run from June 5, 2013 through June 4, 2015, (Filing No. 20-5 at 19).  Stafford also applied for Social Security Disability Insurance benefits ("SSDI benefits"), and the Social Security Administration ("SSA") approved her claim in July 2013.

As required, Stafford provided periodic updates to Anthem regarding her continued treatment.  She informed Anthem by letter dated June 6, 2013 that she would need further orthopedic surgery on her upper arm/shoulder, (Filing No. 20-7 at 52), and she underwent an ORIF revision surgery in July 2013, (Filing No. 20-4 at 48.)  Michael Ferrell, M.D. provided a Supplemental Physician's Statement of Disability form on December 19, 2013, in which he described Stafford as having continued pain in her right arm.  (Filing No. 20-4 at 49.)  He also

indicated that she was restricted from lifting more than 10 pounds and from all repetitive overhead movements and all climbing through February 3, 2014.  (Filing No. 20-4 at 48-49.)  In another letter dated January 14, 2014, Dr. Ferrell described Stafford as having continued right upper arm pain and intermittent right hand pain.  (Filing No. 20-3 at 55.)  He described Stafford as having "no use of the right arm" through July 13, 2014.  (Filing No. 20-3 at 55.)

Under the terms of the Plan, after the initial two-year LTD period, the standard for disability changes.  Under the new standard, a claimant is disabled if she is unable to perform the material and substantial duties of "any gainful occupation" for which she is or might become reasonably qualified by education, training, or experience; is under the regular care of a doctor for the injury or sickness; and is earning less than or equal to 80% of her pre-disability earnings. (Filing No. 20-1 at 231.)  This is known as the "any occupation" standard of disability.  (Filing No. 22 at 3.)  The Certificate of Coverage governing the LTD benefit states that Anthem will stop paying benefits on the earliest of a list of possible dates, including "the date you are no longer disabled according to this plan," and "the date you fail to provide proof of continuing disability." (Filing No. 20-1 at 244.)

Lisa Puckett, Lead Disability Case Manager at Anthem, sent Stafford a letter dated March 3, 2015 informing Stafford that her claim would transition to the "any occupation" standard as of June 5, 2015, and requesting updated information on her condition.  (Filing No. 20-2 at 48-49.) Stafford responded and informed Anthem that she had not seen Dr. Ferrell since January 2014 (because he moved out of state), and that her last physical therapy appointment was in October 2014.  (Filing No. 20-3 at 59.)  Stafford submitted office visit notes from Robert Prince, M.D., a pain management physician dated April 16 and April 30, 2015.  (Filing No. 20-2 at 83-89.)  Dr. Prince noted that Stafford reported a "constant ache," which worsened with movement in her right

upper arm.  ([Filing No. 20-2 at 83](#).)  Stafford reported her pain as, at worst, 9/10.  ([Filing No. 20-2 at 87](#).)  On physical examination, Dr. Prince observed a "slightly reddish unit" to the upper extremity and that "she is weak in all muscles tested there."  ([Filing No. 20-2 at 85](#).)  Dr. Prince diagnosed her with CPRS and ordered a Functional Capacity Evaluation ("FCE").  ([Filing No. 20-2 at 85](#).)

Stafford also submitted the results of the FCE, conducted by Joanne McDowell, ("McDowell"), a licensed practitioner nurse.  In her examination, McDowell noted that Stafford's forearm and hand were darker in color, that swelling was visible in her forearm and wrist, and there was tenderness in the humeral region.  ([Filing No. 20-3 at 1-3](#))  McDowell also noted decreased grip and pinch strength in Stafford's right hand.  ([Filing No. 20-3 at 6](#).)  McDowell noted that "[c]onstant use of the [right] and for any activity is not recommended.  Frequent use for fine motor is also not recommended due to the required small repetitive movements at the shoulder."  ([Filing No. 20-3 at 2](#).)  McDowell limited Stafford to occasionally (1%-33%) performing, among others, the following activities:  bilateral pinching, bilateral simple grasping, right hand fine manipulation, and twisting/hand.  ([Filing No. 20-3 at 1](#).)  She indicated that Stafford could perform frequent (34%-66%) bilateral simple grasping.  ([Filing No. 20-3 at 1](#).)  McDowell also concluded that Stafford met the sedentary and light physical demand levels (with height restrictions).  ([Filing No. 20-3 at 1](#).)

Anthem also received an Attending Physician's Statement ("APS") from Dr. Prince dated May 26, 2015.  (Filing 20-2 at 82.)  The Statement was based on Dr. Prince's April examinations of Stafford, along with the results of the FCE.  Dr. Prince indicated that Stafford was not totally disabled from her current job.  ([Filing No. 20-2 at 82](#).)  He reported that she could return to work at that time, but with, among others, the following restrictions:  no lifting/pushing/pulling/carrying

greater than 10 pounds up to a maximum of 2 times per hour; no climbing or overhead work; and no repetitive motions, including hand grasp, wrist motion, and elbow flexion.  (Filing No. 20-2 at 82.)

Anthem provided these records to an internal vocational rehabilitation consultant to conduct a transferable skills assessment.  (Filing No. 20-2 at 46-47.)  The assessment concluded that Stafford could perform the duties of gainful occupations that were available in her geographic area including those of a claims administrator, office manager, and insurance information clerk. (Filing No. 20-2 at 47.)

After reviewing the submitted materials, Anthem informed Stafford by letter dated June 1, 2015 that she was not eligible for continued LTD benefits after June 4, 2015.  (Filing No. 20-2 at 43-45.)  Anthem concluded that Stafford would no longer meet the Plan's definition of disability as of June 5, 2015.  (Filing No. 20-2 at 43.)  The letter stated that based on Stafford's restrictions and limitations, she could perform the three gainful occupations identified in the transferable skills analysis: claims administrator, office manager, and insurance information clerk.  (Filing No. 20-2 at 44.)

The occupational requirements of a claims administrator include handling and fingering occasionally.  (Filing No. 20-2 at 35.)  A claims administrator position requires finger and manual dexterity in the 11th to 33rd percentile.  (Filing No. 20-2 at 35.)  A claims administrator position requires "using [a person's] hands to handle, control, or feel objects, tools, or controls" about 50% of the time.  The mean annual salary is $52,650.00.  (Filing No. 20-2 at 44.)  An officer manager position is classified as a "Chief Executive" job with supervisory and managerial functions.  (Filing No. 20-2 at 57-58.)  Wage data estimates an annual salary of $195,000.00.  (Filing No. 20-2 at 57.) An information clerk position requires "using [a person's] hands to handle, control, or feel objects,

tools, or controls" about 50% of the time.  (Filing No. 20-2 at 70.)  The occupational requirements include handling and fingering occasionally, (Filing No. 20-2 at 71), and it requires finger and manual dexterity in the 11th to 33rd percentiles, (Filing No. 20-2 at 72).  The mean annual salary is $33,800.00.  (Filing No. 20-2 at 44.)

Stafford then provided her FCE and physical therapy notes to Anthony Mimms, M.D., a physical medicine and rehabilitation specialist, for review.  (Filing No. 20-7 at 30.)  Dr. Mimms reviewed those records but did not conduct a physical examination of Stafford.  (Filing No. 20-7 at 32.)  On an Attending Physician's Statement dated July 18, 2015, Dr. Mimms found that Stafford suffers from a "severe limitation of functional capacity" and is "incapable of minimum (sedentary) activity."  (Filing No. 20-7 at 32.)  Dr. Mimms concluded that Stafford is totally disabled from her job, but wrote that he was "not sure" whether Stafford was totally disabled from any other work.  (Filing No. 20-7 at 33.)  He opined that she is incapable of performing clerical duties and has trouble typing and using the computer.  (Filing No. 20-7 at 33.)  Dr. Mimms concluded that Stafford was unable to work for an indefinite period because of continuing pain.  (Filing No. 20-7 at 33.)  Among other restrictions, Dr. Mimms found that she could perform left-hand work only, and no repetitive motions with the right upper extremity (including hand grasping, wrist motion, and elbow flexion).  (Filing No. 20-7 at 33.)

Stafford appealed the denial of LTD benefits on August 3, 2015.  Kali McCloud ("McCloud"), a Senior Quality Improvement/Compliance Analyst who had not previously been involved with Stafford's claim, was assigned to handle the appeal.  Stafford provided Anthem with Dr. Mimms' Attending Physician Statement.  (Filing No. 20-7 at 32.)

After receiving this additional information, and discussing Stafford's appeal by telephone, McCloud referred all of the medical information in Stafford's file to an independent medical

vendor for review.  (Filing No. 20-7 at 14.)  Anthem requested that a physical medicine and rehabilitation physician review the records and answer specific questions about Stafford's functionality.  (Filing No. 20-7 at 14.)  Renat Sukhov, M.D. performed that review and submitted a report dated September 30, 2015.  (Filing No. 20-7 at 14-22.)   In his report, Dr. Sukhov noted the absence of clinical records in Stafford's file from beyond May 19, 2015, the day of the FCE. (Filing No. 20-7 at 17.)  Dr. Sukhov also noted that the clinical information did not indicate that Stafford had undergone active treatment beyond June 5, 2015, other than pain management. (Filing No. 20-7 at 17.)  He concluded that Stafford could "return to work at a sedentary capacity with right arm elevation restrictions and she should avoid pushing, pulling, carrying, and lifting weights above 10 pounds."  (Filing No. 20-7 at 17.)  McCloud informed Stafford by letter dated October 2, 2015 that Anthem was maintaining its initial determination, based on their review of Dr. Sukhov's opinion, the FCE results, Dr. Prince's Attending Physician Statement, and the previously performed vocational review.  (Filing No. 20-7 at 6-9.)

Stafford filed a Complaint in this Court requesting relief pursuant to Section 1132 of ERISA, claiming a wrongful denial of benefits.  Stafford and the Defendants have filed cross-motions for summary judgment (Filing No. 21; Filing No. 23).

## II.  LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56(c) where there exists "no genuine issue as to any material facts and ... the moving party is entitled to judgment as a matter of law."  Federal Rule of Civil Procedure 56.  This applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56.  *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment*

*Serv., Inc. v. Int'l Union of Operating Eng'rs.,* 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Ins.,* 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir. 1998)).

## III.   DISCUSSION

### A.   Standard of Review for ERISA Claims

ERISA, 29 U.S.C. § 1001 *et seq.,* was enacted to "protect the interests of employees and their beneficiaries in pension and welfare benefit plans."  *Anweiler v. Am. Elec. Power Serv. Corp.,* 3 F.3d 986, 989-90 (7th Cir. 1993).  ERISA governs employee benefit plans and provides appropriate remedies, sanctions, and access to federal court.  *Id.* at 990.  Courts reviewing a denial of a claim for benefits under an ERISA plan apply a *de novo* standard unless the plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  When, as in this case, such discretionary authority is present, courts apply a deferential "arbitrary and capricious standard."  *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan,* 429 F.3d 698, 700 (7th Cir. 2005).  The parties agree that the arbitrary and capricious standard of review applies.

Under this standard, the Court will uphold the plan's decision "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the

8

problem." *Sisto,* 429 F.3d at 700 (quoting *Houston v. Provident Life & Accident Ins. Co.,* 390 F.3d 990, 995 (7th Cir. 2004)).  However, a "plan administrator's procedures are not reasonable if its determination ignores, without explanation, substantial evidence that the claimant has submitted" that addresses the ultimate issue.  *Majeski v. Metro. Life Ins. Co.,* 590 F.3d 478, 484 (7th Cir. 2009).  "It is not our function to decide whether we would reach the same conclusion as the [administrator] or even rely on the same authority."  *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund,* 390 F.3d 1040, 1045 (7th Cir. 2004).  Moreover, when responsibility for both claim determinations and payouts is vested in the same entity, "the court is required to take such an obvious conflict of interest into consideration—along with all of the other relevant factors—in determining whether the entity's determination was arbitrary and capricious."  *Leger v. Tribune Co. Long Term Disability Benefits Plan,* 557 F.3d 823, 831 (7th Cir. 2009).

The Defendants moved for summary judgment, arguing that Anthem Life's termination of benefits was not arbitrary and capricious.  (Filing No. 22 at 17.)  The Defendants contend that Stafford did not meet her burden to provide proof of continuing disability, and that Anthem made a correct determination that Stafford was no longer disabled under the Plan.  (Filing No. 22 at 19-22.)  Stafford opposes the Defendants' Motion and has filed her own Cross-Motion for Summary Judgment (Filing No. 27).  Stafford argues that a number of deficiencies render Anthem's determination arbitrary and capricious: (1) that Anthem failed to incorporate all of the work restrictions identified by the FCE into its analysis of her claim, (Filing No. 24 at 23); (2) that Anthem erred by failing to fully consider the work restrictions imposed by Dr. Prince, (Filing No. 24 at 24); (3) that medical evidence supported a finding of disability, (Filing No. 24 at 25); (4) that Anthem's vocational review was deficient, (Filing No. 24 at 26); and (5) that Anthem improperly discounted Stafford's award of social security benefits, (Filing No. 24 at 29).

B.    **The FCE, Dr. Prince, and Past Medical Evidence**

Stafford raises several interrelated arguments, all claiming that Anthem ignored or improperly discounted several pieces of evidence that support a finding of total disability.

As for the FCE analysis, Stafford contends that Anthem failed to incorporate all of the work restrictions identified by the FCE into its analysis of her claim.  She points out that in its June 1, 2015 denial letter, Anthem includes only one sentence regarding the FCE findings: "[t]he evaluator reported that based on the exam findings, [Stafford has] the ability to perform/work at a sedentary occupation."  (Filing No. 24 at 5.)  Anthem did not specify that the same FCE also concluded that "[c]onstant use of the [right] hand for any activity is not recommended.  Frequent use for fine motor is also not recommended due to the required small repetitive movements at the shoulder."  (Filing No. 20-3 at 2.)  And it did not specify that the FCE examiner limited Stafford to occasionally (1%-33%) performing the following activities: bilateral pinching, elbow flexion/wrist motion, bilateral firm grasping, right hand fine manipulation, and twisting/hand. (Filing No. 20-3 at 1.)

However, in the October 2, 2015 letter denying Stafford's appeal, Anthem stated that Stafford "had a functional capacity evaluation (FCE) on May 19, 2015 which suggested [Stafford was] capable of performing sedentary activity with modified use of the right arm.  [Stafford was] able to lift up to sixty-one (61) inches due to limitations in range of motion (ROM)."  (Filing No. 20-7 at 9.)  Thus, it appears that Anthem considered the limitations indicated by the FCE.  And, more importantly, the FCE itself stated that Stafford met the sedentary and light physical demand levels.  (Filing No. 20-3 at 1.)

 Stafford likewise argues that Anthem erred by failing to fully consider the work restrictions imposed by Dr. Prince.  Here again, however, Dr. Prince concluded that Stafford could

return to work "immediately" with certain work restrictions, and that Stafford was capable of performing work at the sedentary level. Stafford has not shown that it was unreasonable for Anthem to rely on Dr. Prince's statement that she could return to work immediately with those work restrictions.

Stafford also contends that Anthem failed to consider her past medical evidence, which supports a finding of total disability. Stafford argues that Anthem ignored "the complicated surgical procedure that she underwent, bone stimulator therapy, multiple courses of physical therapy, treatment with a pain management specialist, a revision surgery, and home exercises." (Filing No. 24 at 25.) However, as Anthem points out, most of the evidence that Stafford cites originated around 2013, when Anthem did consider Stafford to be totally disabled. What is more relevant for Anthem's current challenged determination is medical evidence proximate to the period for which she is requesting disability coverage, beginning in June 2015. But, as discussed above, Stafford's more recent clinical records support the conclusion that she could perform sedentary work.

There is rational support in the record for Anthem's interpretations of the FCE Report, Dr. Prince's APS, and Stafford's medical evidence. Granting Anthem the deference required on review, the Court cannot conclude that Anthem's conclusions were arbitrary and capricious.

## C.   <u>Vocational Review</u>

Stafford argues that, for multiple reasons, Anthem's vocational review was deficient. First, she argues that Anthem did not consider all of her work restrictions when making its vocational assessment. The assessment itself states that "[t]his vocational assessment is based on a Functional Capacity Evaluation completed on 5/19/15. The FCE indicated that Stafford is able to work at the sedentary level with no constant hand movements of the right hand, and no frequent use of right

11

hand fine motor skills." (Filing No. 20-2 at 46.)  Stafford takes issue with this statement, because it does not list all of the work restrictions as indicated on the FCE, and it does not include work restrictions imposed by Dr. Prince.  (Filing No. 24 at 26.)  She does not appear to argue that the restrictions themselves render her totally disabled, but appears instead to argue that a proper application of those restrictions would necessitate a finding that no gainful occupation exists for her.

Anthem identified three occupations that Stafford would be capable of performing: office manager, claims administrator, and information clerk.  The parties agree that the office manager position should not be considered a gainful occupation for Stafford, because it does not align with her skills or experience.  Stafford argues that she could not perform the duties of the other two occupations, given her work restrictions.

As to the claims administrator position, Stafford argues that she could not perform this job because it requires "medium" finger dexterity, which she does not have.  A claims administrator position requires finger and manual dexterity in the 11th to 33rd percentile.  (Filing No. 20-2 at 35.)  A claims administrator position requires "using [a person's] hands to handle, control, or feel objects, tools, or controls" about 50% of the time.  Stafford argues that her restrictions to occasionally (1%-33% of the workday) engage in bilateral pinching, elbow flexion/wrist motion, bilateral firm grasping, right hand fine manipulation, and twisting/hand prevent her from performing that job.  (Filing No. 20-3 at 1.)  However, the record does not provide any explanation as to the relationship between her restriction and the requirement of the claims administrator position.  What "medium" or 11th to 33rd percentile finger dexterity means is not defined, nor is it clear how the job duties of a claims administrator relate to Stafford's restrictions.

Stafford likewise argues that she cannot perform the information clerk position, because it requires "using [a person's] hands to handle, control, or feel objects, tools, or controls" about 50% of the time.  (Filing No. 20-2 at 70.)  She argues that this is inconsistent with the restrictions imposed by the FCE and Dr. Prince.  But again, Stafford does not explain how the job duties of the information clerk position and her work restrictions interact.  For example, the FCE limited Stafford to occasionally (1%-33%) engaging in firm grasp, fine manipulation, and twisting.  (Filing No. 20-3 at 1.)  However, she is permitted to frequently (34%-66%) engage in simple grasping.  (Filing No. 20-3 at 1.)  Whether the position's requirement to "handle, control, or feel objects, tools, or controls" falls into firm grasp or simple grasp is not defined by any of the documents in the record.

Based on the information in the record, it was not arbitrary and capricious for Anthem to conclude that Stafford could perform the sedentary jobs of information clerk or claims administrator.  Stafford's work restrictions are not clearly incompatible with the job duties of those positions as indicated in the administrative record.  And the Court reiterates that, based on the terms of the Plan, it was Stafford's burden to provide sufficient evidence to show that she is not capable of performing any gainful occupation.

**D.    Social Security Benefits**

Stafford argues that Anthem improperly discounted her SSDI award.  Stafford argues that the SSA standard is more stringent than the "any gainful occupation" standard, and that Anthem was required to explain why the reasons supporting Stafford's SSA award would not apply here.  Anthem argues that Stafford's social security determination was made roughly contemporaneously with Anthem's initial award of LTD benefits in 2013.  Her application for continuing benefits

occurred nearly two years later, and therefore Anthem was reviewing both medical records and changed circumstances that were not before the SSA.

The Court agrees with Anthem that it was not an abuse of discretion to discount Stafford's award of SSDI benefits.  There is no dispute that the medical records and evaluations conducted after June 2013 were not considered by SSA, including Dr. Prince's APS and the FCE.  At the time that Stafford applied for SSDI, she was still subject to complete limitations on using her right hand, and she was facing an imminent ORIF revision surgery.  The medical evidence submitted after June 2013 supports the conclusion that Stafford's condition improved after 2013, as she recovered from her second surgery.  It was rational for Anthem to discount the SSA's 2013 grant when determining Stafford's 2015 application.

### E.      Dr. Mimms' Attending Physician Statement

Stafford argues that Anthem failed to consider or mention Dr. Mimms' medical opinion in its final denial letter, which constitutes evidence of an arbitrary and capricious decision.  (Filing No. 24 at 31.)  First, Dr. Mimms' opinion does not state that Stafford is totally disabled: he indicated that he was "not sure" whether Stafford was capable of performing any other work. Second, Dr. Mimms' APS was provided to Dr. Sukhov, who performed the independent review of Stafford's medical records during the course of her appeal.  That Dr. Sukhov came to a different conclusion from Dr. Mimms, and that Anthem chose to credit that opinion, does not constitute arbitrary and capricious decision-making.  Dr. Mimms' opinion was inconsistent with other record evidence, and Anthem could have rationally concluded that Dr. Sukhov's report was more consistent with other medical evidence.  Moreover, Dr. Sukhov had access to the entirety of Stafford's submitted medical records—not just the FCE and physical therapy notes that were

14

provided to Dr. Mimms.  Therefore, the Court cannot conclude that Anthem's decision to discount

Dr. Mimms' APS constituted arbitrary and capricious decision-making.

**F.**   **Conflict of Interest**

In *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 108 (2008), the Supreme Court

held that when "the entity that administers [an ERISA] plan, such as an employer or an insurance

company, both determines whether an employee is eligible for benefits and pays benefits out of its

own pocket …. this dual role creates a conflict of interest."  The Supreme Court also held that "a

reviewing court should consider that conflict as a factor in determining whether the plan

administrator has abused its discretion in denying benefits" and that "the significance of the factor

will depend upon the circumstances of the particular case."  *Id.*

In *Majeski,* the Seventh Circuit explained that when determining the likelihood that a

conflict influenced a plan administrator's decision, courts look to "the reasonableness of the

procedures by which the plan administrator decided the claim, any safeguards the plan

administrator has erected to minimize the conflict of interest, and the terms of employment of the

plan administrator's staff that decides benefit claims."  *Majeski,* 590 F.3d at 482.

Stafford argues that because Anthem would have become the payor of Stafford's benefits

had her claim been granted, circumstances suggest that a conflict of interest impacted Anthem's

decision.  Anthem responds that a member of the Anthem group of companies (an indirect parent

company) had already been paying Stafford's benefits, so the transition to payor is of little

significance.

Stafford does not argue that Anthem has a significant financial stake in the outcome, or

that the compensation structures or procedures by which Anthem decided her claim provide

evidence of a conflict of interest.  Anthem assigned the review of her case on appeal to a new

claims analyst, McCloud, who had not been previously involved in Stafford's case.  And Anthem contracted with an independent party to review Stafford's medical records and provide a recommendation as to her vocational abilities.  The Court agrees with Anthem that Stafford has not shown a significant conflict of interest.  As the Supreme Court has instructed, the conflict of interest:

> should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy….

*Glenn,* 554 U.S. at 117 (citations omitted).  In this case, the conflict of interest does not have great importance, and it does not push the case over the edge toward a finding of capriciousness.  *See Jenkins v. Price Waterhouse Long Term Disability Plan,* 564 F.3d 856, 861-62 (7th Cir. 2009).

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Anthem's denial of Stafford's claim for long-term disability benefits was not arbitrary and capricious.  Therefore, Stafford's Cross-Motion for Summary Judgment (Filing No. 23) is **DENIED**, and Anthem's Motion for Summary Judgment (Filing No. 21) is **GRANTED**.

**SO ORDERED.**

Date:  3/17/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

16

DISTRIBUTION:

Jameson A. Young
KELLER & KELLER
jyoung@2keller.com

Nicholas Thomas Lavella                          Ada W. Dolph
KELLER & KELLER                                  SEYFARTH SHAW LLP
nlavella@2keller.com                             adolph@seyfarth.com